UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ X

DIRECTV, INC.,

                    Plaintiff,

   -against-

CAIPHAS MURRAY,

                    Defendant.

**REPORT & RECOMMENDATION**
03-CV-5561 (NGG) (KAM)

------------------------------------------------------------------------ X

**KIYO A. MATSUMOTO, United States Magistrate Judge:**

By order entered October 19, 2004, United States District Judge Nicholas G. Garaufis referred this matter, pursuant to 28 U.S.C. § 636(b), to the undersigned magistrate judge for an inquest on damages after ordering, upon the default motion of plaintiff, that default be entered against defendant, Caiphas Murray, for a violation of the Communications Act of 1934, codified, as amended, at 47 U.S.C. § 605, and the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510-2521. Docket no. 10; see also docket no. 1, Complaint ("Compl.") ¶ 5. Plaintiff has submitted the affidavit of its counsel, Daniel Jacobson, Esq. ("Jacobson Aff.") and a memorandum of law ("Pl. MOL"), in support of its application for default judgment, attorneys' fees and costs. Docket no. 11. Defendant has not made any submissions in opposition, despite receiving notice and an opportunity to do so. See docket no. 11, Declaration of Service, dated Oct. 25, 2004. For the reasons set forth below, it is respectfully recommended that plaintiff be awarded statutory damages of $2,000.00, as well as attorneys' fees and costs of $1,314.50, for a total award of $3,314.50, and that plaintiff's request for the entry of a permanent injunction

against defendant be deemed withdrawn.

## BACKGROUND

Plaintiff, a California corporation, operates a direct satellite broadcast system which provides television and other programming to more than ten million homes and businesses throughout the United States. Compl. ¶ 1. To ensure that only its paying customers may view its programming and to prevent unauthorized interception, plaintiff electronically scrambles, or "encrypts," its satellite transmissions. Compl. ¶ 2. Plaintiff's legitimate paying customers are required to create an account with plaintiff and to obtain an access card and certain other hardware. Id. Upon activation of the access card by plaintiff, customers are able to receive a decrypted signal and view plaintiff's programming. Id.

On or about November 3, 2001, plaintiff, pursuant to a temporary restraining order and assisted by United States Marshals, seized records of an entity "distributing electronic devices primarily designed for the surreptitious interception of satellite communications" broadcast by plaintiff. Compl. ¶ 3. The seized records included documents indicating that defendant had purchased an illegally modified DirecTV access card ("pirate access device"). Id. Plaintiff alleges that defendant purchased and used the pirate access device designed to permit viewing plaintiff's programming without authorization or payment to plaintiff. Compl. ¶ 4. Specifically, the complaint alleges that defendant, on or about June 9, 2001, "purchased a printed circuit board device called a 'Boot Loader Board,'" useful primarily to intercept electronic communications. Compl. ¶ 7.

Plaintiff's complaint seeks damages and injunctive relief for the unauthorized interception of plaintiff's satellite transmissions in violation of 47 U.S.C. § 605, for the

unauthorized interception of electronic communications in violation of 18 U.S.C. § 2511(1)(a) and for possession of a pirate access device in violation of 18 U.S.C. § 2512(1)(b). Although plaintiff's third prayer for relief requests, "[i]n the event of a default," damages only for violations of 18 U.S.C. § 2511(1)(a), as well as attorneys' fees and costs, plaintiff's Memorandum of Law in support of its default judgment application "seeks statutory damages pursuant to *either* 47 U.S.C. § 605(e)(3)(C)(i)(II) for Defaulting Defendant's violations of 47 U.S.C. § 605(a), *or, alternatively*, pursuant to 18 U.S.C. § 2520(c)(2)(B) for Defaulting Defendant's violations of 18 U.S.C. § 2511(1)(a)." Pl. MOL at 2 (emphasis added). Plaintiff requests that the Court award damages pursuant to 18 U.S.C. § 2520(c)(2)(B) for a violation of 18 U.S.C. § 2511(1)(a) because damages under this provision "are greater than those available under 47 U.S.C. § 605(e)(3)(C)(i)(II)" for a violation of 47 U.S.C. § 605(a). Id. Notwithstanding this discrepancy, this Court will construe plaintiff's damages application as being based 47 U.S.C. § 605 and 18 U.S.C. §§ 2511 and 2520.

## DISCUSSION

### A. Liability

Once a default judgment is entered, a defendant is deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability. See Greyhound Exhibitgroup, Inc., v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992); Chen v. Jenna Lane, Inc., 30 F. Supp. 2d 622, 623 (S.D.N.Y. 1998) (where "the court determines that defendant is in default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.").

The allegations of plaintiff's complaint clearly establish the elements of liability required to state a claim under 47 U.S.C. § 605(a). Section 605(a) provides, in relevant part, that "[n]o person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication . . . for his own benefit or for the benefit of another not entitled thereto." 47 U.S.C. § 605(a). Since plaintiff alleges that its transmissions were conveyed via "satellite" (see e.g., Compl. ¶ 2), defendant's interception of plaintiff's transmission constitutes a violation of § 605(a). See KingVision Pay-Per-View Corp., Ltd. v. Tardes Calenas Moscoro, Inc., No. 01-9775, 2004 WL 473306, at *2 (S.D.N.Y. Mar. 12, 2004) (holding that defaulting defendant was liable under § 605, where plaintiff's factual allegations referred to "satellite transmissions, which indicate that the broadcast originated with a radio transmission."). Plaintiff's complaint further alleges that "[d]efendant has received and/or assisted others in receiving" plaintiff's satellite transmissions of television programming without authorization. Compl. ¶ 12. Therefore, plaintiff has properly stated a claim under § 605(a) and, by virtue of his default, defendant is liable to plaintiff for violating this provision. See Greyhound Exhibitgroup, 973 F.2d at 158.

The allegations of plaintiff's complaint also clearly establish the elements of liability required to state a claim under 18 U.S.C. § 2520(c)(2)(B) for a violation of 18 U.S.C. § 2511(1)(a), a criminal statute which applies to any person who "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral or electronic communication." 18 U.S.C. §§ 2511(1)(a). Section 2520, which tracks the language of § 2511(1)(a), creates a private right of action: "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this

chapter may in a civil action recover from the person or entity . . . which engaged in that violation such relief as may be appropriate." 18 U.S.C. § 2520(a).

Plaintiff alleges that defendant used an unauthorized device to decrypt and view plaintiff's satellite transmissions of television programming and, in so doing, "intentionally intercepted, endeavored to intercept, or procured other persons to intercept or endeavor to intercept" plaintiff's satellite transmissions. Compl. ¶ 16. Accordingly, plaintiff has properly stated a claim under 18 U.S.C. §§ 2511(1)(a) and 2520(a). See DirecTV, Inc. v. Perrier, No. 03-400, 2004 WL 941641, at *3 (W.D.N.Y. Mar. 15, 2004) (holding that defaulting defendant was liable under § 2511 where plaintiff alleged that defendant used a pirate access device to intentionally intercept plaintiff's electronic communications, specifically, plaintiff's satellite transmissions); see also Directv, Inc. v. Branski, No. 03-5453, slip. op. at 4 (E.D.N.Y. Oct. 26, 2004) (Magistrate Judge Gold finding that plaintiff stated claim under §§ 2511(1)(a) and 2520(a) where device purchased by defendant was used to decrypt and view plaintiff's satellite transmissions of television programming) (Report and Recommendation adopted by Judge Dearie).

Plaintiff's third claim alleges a violation of 18 U.S.C. § 2512(1)(b), which provides, in relevant part, that any person who intentionally "possesses, or sells any . . . device, knowing or having reason to know that the design of such device renders it primarily useful for the purpose of the surreptitious interception of wire, oral, or electronic communications, and that such device or any component thereof has been or will be sent through the mail or transported in interstate or foreign commerce" shall be guilty of a felony. "A dispute exists among the federal courts regarding the scope of the right to civil recovery created by § 2520(a), specifically whether

it encompasses claims for a violation of § 2512(1)(b). The Second Circuit has not ruled on this question of law." DirecTV v. Deskin, No. 03-518, 2005 WL 730214, at * 5 (D. Conn. Mar. 29, 2005) (adopting majority view finding no private right of action) (citing DirecTV v. Treworgy, 373 F.3d 1124 (11th Cir. 2004)).[1]

The Court need not decide whether 18 U.S.C. § 2520 gives rise to a private right of action for a violation of 18 U.S.C. § 2512 because each of plaintiff's three causes of action are based upon the same alleged misconduct by defendant, and as such, plaintiff may adequately pursue its claims for relief pursuant to the two other statutes under which plaintiff has been found liable, 47 U.S.C. § 605 and 18 U.S.C. § 2511. Accordingly, this Court will limit its consideration of damages to plaintiff's claims pursuant to 47 U.S.C. § 605 and 18 U.S.C. § 2511.

**B. Damages**

Although the allegations of a complaint pertaining to liability are deemed admitted upon entry of a default judgment, allegations relating to damages are not. See Chen, 30 F. Supp. 2d at 623. Instead, claims for damages generally must be established in a hearing at which the defendant is afforded the opportunity to contest the amount claimed. See Greyhound Exhibitgroup, 973 F.2d at 158.

Given that plaintiff seeks an award of statutory damages, and does not seek to

---

[1]Other courts which have held that § 2520 does not confer a right of action for violations of § 2512 include: Flowers v. Tandy Corp., 773 F.2d 585 (4th Cir. 1985); DirecTV, Inc. v. Hosey, 289 F. Supp. 2d 1259 (D. Kan. 2003); DirecTV, Inc. v. Cardona, 275 F. Supp. 2d 1357 (M.D. Fla. 2003); and DirecTV, Inc. v. Beecher, No. 03-309, 2003 WL 23094715 (S.D. Ind. Nov. 7, 2003). Cases which have held that § 2520 does confer a right of action for violations of § 2512 include: DirecTV, Inc. v Thanadabouth, No. 08-8576, 2004 WL 1878829 (N.D. Ill. Aug. 19, 2004); DirecTV, Inc. v Marker, No. 02-818, 2003 U.S. Dist. LEXIS 23770 (W.D. Wash. Jul. 7, 2003); and DirecTV, Inc. v. Dougherty, No. 02-5576, 2003 U.S. Dist. LEXIS 23654 (D. N.J. Oct. 8, 2003).

establish or recover its actual damages, and that defendant has not filed any opposition to plaintiff's submissions, or otherwise responded to plaintiff's allegations or to the relief sought, despite having notice and an opportunity to do so (see docket no. 11, Declaration of Service, dated Oct. 25, 2004), a hearing is not warranted. Indeed, the holding of an inquest by affidavit, without an in-person court hearing, is permitted "as long as [the court has] ensured that there was a basis for the damages specified in the default judgment." Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997) (quoting Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989)).

*1. First Cause of Action: 47 U.S.C. § 605(a)*

A claimant who has established liability under 47 U.S.C. § 605(a) may elect between actual damages plus defendant's profits, if any, or statutory damages. See 47 U.S.C. § 605(e)(3)(C)(i)(II). As previously mentioned, plaintiff elects statutory damages. See PL. MOL at 2. Where a party elects to recover statutory damages, it may recover an award from $1,000.00 to $10,000.00 for each violation of § 605(a).

Title 47 U.S.C. § 605(e)(3)(C)(i)(II) authorizes the court to award statutory damages "as the court considers just." In exercising its discretion to award damages, a court should consider "both the nature of the violation in light of the statutory scheme involved, as well as the particular circumstances concerning the defendant's actions in this case in determining damages." Cablevision Sys. New York City Corp. v. Lokshin, 980 F. Supp. 107, 113 (E.D.N.Y. 1997). Courts have used a variety of methods to calculate damages under § 605, including (1) assessing the maximum statutory rate; (2) estimating the amount of services the defendant pirated and applying a multiplier to that figure; (3) adopting the plaintiff's estimate of

the amount of services pirated; and (4) where there has been no evidence of the defendant's actual usage or commercial advantage, applying the statutory minimum for each pirated device. DirecTV v. Montes, 338 F. Supp. 2d 352, 355 (D. Conn. 2004) (citing CSC Holdings, Inc. v. Ruccolo, 01-5162, 2001 WL 1658237, at *2 (S.D.N.Y. Dec. 21, 2001)) (collecting cases)).

With respect to the first factor, the Court is reluctant to recommend the maximum statutory damages of $10,000.00 because it finds that such an amount is excessive in light of defendant's single violation of 47 U.S.C. § 605(a). See Compl. ¶ 3 (defendant purchased "*a* Pirate Access Device") (emphasis added). Moreover, there is no indication that defendant profited in any way from his misconduct beyond receiving plaintiff's television programming free of charge. Nor is there any evidence that defendant induced or assisted others in committing similar unlawful activity. With respect to the second factor, the Court is equally reluctant to estimate the amount of services pirated by defendant because plaintiff presented no evidence as to the services and programs actually pirated, nor the rates typically charged by plaintiff to obtain its satellite programming. With respect to the third factor, by seeking statutory damages, plaintiff has not attempted to provide the amount of its actual damages or the profits earned by defendant, if any. Thus, under these facts, this Court finds that the minimum statutory award of $1,000.00 against defendant is appropriate. This award is based on one violation of 47 U.S.C. § 605(a). See DirecTV, Inc. v. Kaas, 294 F. Supp. 2d 1044 (N. D. Iowa 2003) (awarding statutory minimum of $1,000.00 per violation); DirecTV, Inc. v. Albright, No. 03- 4603, 2003 WL 22956416, at *3 (E.D. Pa. Dec. 9, 2003) (awarding $1,000.00 statutory damages and citing similar cases); DirecTV, Inc. v. Hamilton, 215 F.R.D. 460, 462 (S.D.N.Y 2003) (awarding $1,000.00 per violation).

However, as some courts have observed, awarding the statutory minimum prescribed by 47 U.S.C. § 605(e)(3)(C)(i)(II) "'would not be sufficient deterrence' since the penalty would merely be 'the amount that should have been paid.'" Cablevision Sys. New York City Corp., 2002 WL 31045855, at *4 (quoting Time Warner Cable v. Domsky, No. 96-6851, 1997 WL 33374593, at *6 (S.D.N.Y. Sept. 5, 1997)). In light of the statutory objective of deterring future violations of § 605, it its respectfully recommended that the amount of statutory damages be doubled to $2,000.00. See Kingvision Pay-Per-View, Ltd. v. Recio, No. 02-6583, 2003 WL 21383826, at *5 (S.D.N.Y. June 11, 2003) (court doubled the initial statutory damages amount of $1,000.00 to $2,000.00 for deterrence purposes) (citing Kingvision Pay-Per-View, Ltd. v. El Rey Del Bistic y Caridad, Inc., 2001 WL 1586667 at *2 (S.D.N.Y. Dec. 12, 2001)); see also H.R. Rep. No. 98-934, at 84 (1984), *reprinted in* 1984 U.S.C.C.A.N. 4655, 4720.

*2. Second Cause of Action: 18 U.S.C. § 2511(1)(a)*

In its second cause of action, plaintiff seeks statutory damages pursuant to 18 U.S.C. § 2520(c)(2)(B) for a violation of 18 U.S.C. § 2511(1)(a). That section authorizes statutory damages to any person whose electronic communication is intercepted, disclosed or intentionally used in the amount of the greater of $100.00 a day for each day of violation or $10,000.00. 18 U.S.C. § 2520(c)(2)(B). Although a dispute exists among the circuits regarding whether an award of damages under § 2520(c)(2) is discretionary or mandatory, courts generally hold that such awards are within the discretion of the trial court, which plaintiff concedes. See Pl. MOL at 4; see also DirecTV v. Meinecke, No. 03-3731, 2004 WL 1535578, at * 2 (S.D.N.Y. Jul. 9, 2004) (collecting cases). The court's discretion, however, extends only to granting damages strictly as provided in the statute or not granting damages at all; the court has no

discretion to award damages in an amount between the two statutory choices. See DirecTV, Inc. v. Perrier, No. 03-400, 2004 WL 941641, at *4 (W.D.N.Y. Mar. 15, 2004) (citing Schmidt v. Devino, 206 F. Supp. 2d 301, 306 (D. Conn. 2001)).

Courts holding a damages award to be discretionary under § 2520(c)(2) typically adhere to the following analysis:

> (1) The court should first determine the amount of actual damages to the plaintiff plus the profits derived by the violator, if any.
> (2) The court should next ascertain the number of days that the statute was violated, and multiply by $100.
> (3) The court should then tentatively award the plaintiff the greater of the above two amounts, unless each is less than $10,000, in which case $10,000 is to be the presumed award.
> (4) Finally, the court should exercise its discretion to determine whether the plaintiff should receive any damages at all in the case before it.

Meinecke, 2004 WL 1535578, at * 3 (citing Dorris v. Absher, 179 F.3d 420, 429 (6th Cir. 1999)).

With respect to the first inquiry, plaintiff has not attempted to provide the amount of its actual damages or the profits earned by defendant. With respect to the second inquiry, no information is available to the Court on the duration of defendant's violation of § 2511(1)(a). In its memorandum of law, plaintiff argues that defendant could have used the pirate access device for over fifteen months, from June 9, 2001, the date defendant purchased the device, until October 2002, the month during which the device was rendered "useless" due to modifications in plaintiff's encryption technology. Pl. MOL at 6. Because statements contained in a memorandum of law are not evidence (see Giannullo v. City of New York, 322 F.3d 139, 142 (2d Cir. 2003)), the Court cannot assess damages under the $100.00 per day formula. Indeed, "in the absence of information regarding how many days . . . [the defendant] actually intercepted

communications in violation of § 2511, any such calculation is speculative." Meinecke, 2004 WL 1535578, at *3. Plaintiff argues that in the absence of evidence of actual damages, the "presumptive award of damages is $10,000." Pl. MOL at 6 (quoting DirecTV v. Romano, No. 03-5106, slip. op. at 3 (E.D.N.Y. July 29, 2004)); see also Meinecke, 2004 WL 1535578, at *3. This Court respectfully disagrees.

Pursuant to the fourth factor cited above, this Court has contemplated whether to exercise its discretion to determine if plaintiff should receive any damages at all under 18 U.S.C. § 2520(c)(2)(B) for a violation of 18 U.S.C. § 2511(1)(a). In analyzing this factor, some courts have been guided by the following non-exhaustive list of considerations:

> (1) Whether the defendant profited by his violation; (2) whether there was any evidence that the defendant actually used his pirate access devices; (3) the extent of . . . [plaintiff's] financial harm; (4) the extent of the defendant's violation; (5) whether the defendant had a legitimate reason for his actions; (6) whether an award of damages would serve a legitimate purpose; and (7) whether the defendant was also subject to another judgment based on the same conduct.

Meinecke, 2004 WL 1535578, at * 3 (citing DirecTV v. Huynh, 318 F. Supp. 2d 1122, 1132 (M.D.Ala. May 19, 2004)).

Due to defendant's default and the resultant lack of discovery, plaintiff has not presented for the Court's consideration any factual bases for factors 1, 2, 4, 5 and 7. The factors that cannot be analyzed because of defendant's default, however, should not weigh in defendant's favor. As noted by the Meinecke court, with respect to the fifth factor, "it can hardly be contested that pirate access devices rarely serve a legitimate purpose beyond stealing satellite signals . . . and the record in this case is of course devoid of any explanation as to why [defendant] . . . bought the device." Meinecke, 2004 WL 1535578, at * 3. Moreover, plaintiff

has not presented evidence regarding the third factor, the extent of its financial harm, or the sixth factor, whether an award would serve a legitimate purpose.

In light of the above inquiry, and as previously discussed, this Court determines that awarding plaintiff $10,000.00 in statutory damages pursuant to 18 U.S.C. § 2520(c)(2)(B), for a violation of 18 U.S.C. § 2511(1)(a), would be excessive. See Perrier, 2004 WL 941641, at *4 (finding $10,000.00 excessive where plaintiff alleged two violations of § 2511) (citing Kaas, 294 F. Supp. 2d at 1049). The Court is confident that the recommended $2,000.00 in damages under 47 U.S.C. § 605(a) will serve the legitimate purpose of providing compensation to plaintiff for the defendant's violation, more specifically, defendant's theft of plaintiff's services allegedly for fourteen months, and deterring plaintiff from pirating satellite television in the future. Accordingly, it is respectfully recommended that the district court decline to exercise its discretion to award damages pursuant to 18 U.S.C. § 2520(c)(2)(B), for a violation of 18 U.S.C. § 2511(1)(a), and limit plaintiff's award to $2,000.00 pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II), for a violation of 47 U.S.C. § 605(a). See Perrier, 2004 WL 941641, at *4 (awarding damages only pursuant to § 605(e)(3)(C)(i)(II), which "appropriately punishes Defendant for his illegal actions, adequately compensates Plaintiff for any damage it suffered, and sufficiently deters others from engaging in similar unlawful conduct").

## C.  Injunctive Relief

Plaintiff's complaint also seeks equitable relief enjoining and restraining defendant from importing, possessing or using pirate access devices, as well as requiring defendant to surrender all pirate access devices to plaintiff. See Compl., Prayer for Relief ¶ 2. In its submissions in support of default judgment and damages, plaintiff failed to set forth the legal

and factual bases for injunctive relief.  Therefore, plaintiff was directed to inform the Court, in writing, on or before May 12, 2005, whether it would abandon its claim for such relief, or alternatively, submit additional briefing in support of such relief.

By letter dated May 12, 2005, plaintiff's counsel indicated that "[p]laintiff is not seeking injunctive relief as part of its default motion."  Docket no. 12.  Accordingly, the Court need not consider this claim for relief.

**D.  Attorneys' Fees and Costs**

Both 47 U.S.C. § 605(e)(3)(B)(iii) and 18 U.S.C. § 2520(b)(3) provide for an award of reasonable attorneys' fees and other litigation costs.  The method for determining the amount of attorneys' fees is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," or the lodestar.  Hensley v. Eckerhart, 461 U.S. 424, 434 (1983); Chambless v. Masters, Mates & Pilots Pension Plan, 885 F.2d 1053, 1058-59 (2d Cir. 1989), *cert. denied*, 496 U.S. 905 (1990).  The reasonable market rate of paralegal and law clerk time is also recoverable.  Chambless, 885 F.2d at 1058-59.  Although plaintiff's complaint alleges $850.00 in attorneys' fees and costs "[i]n the event of default," (see Compl, Prayer for Relief ¶ 3), its motion papers in support of its default judgment application seeks $1,539.50, which includes attorneys' fees and costs incurred relative to this litigation following the filing of the complaint.  See Jacobson Decl. ¶ 4.

*1. Hourly rates*

A party seeking fees bears the burden of supporting its claim of hours expended by accurate, detailed and contemporaneous time records.  See New York State Ass'n for Retarded Children v. Carey, 711 F.2d 1136, 1147-48 (2d Cir. 1983).  The reasonable

-13-

hourly rates should be based on the rates "prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation." Cruz v. Local Union No. 3, 34 F.3d 1148, 1159 (2d Cir. 1994) (quoting Blum v. Stevenson, 465 U.S. 886, 896 n.11 (1984)). The relevant community is the district in which the court sits. Luciano v. Olsten Corp., 109 F.3d 111, 115 (2d Cir. 1997). Determination of the prevailing market rates may be based on evidence presented or a judge's own knowledge of hourly rates charged in the community. See Chambless, 885 F.2d at 1059.

The fee applicant bears the burden of "produc[ing] satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation." Blum, 465 U.S. at 886. Moreover, "to decide if a rate above the prevalent market rate is justified, the court may consider factors such as complexity or novelty of the issues, and counsel's experience or expertise in a specific area of law." Rotella v. Bd. of Educ. of the City of New York, No. 01-434, 2002 WL 59106, at *1 (E.D.N.Y. Jan. 17, 2002) (Garaufis, J.) (citing Luciano, 109 F.3d at 116). "[I]f the documentation is inadequate the district court 'may reduce the award accordingly.'" Rotella, 2002 WL 59106, at *1 (quoting Hensley, 461 U.S. at 433).

The Rotella court found that "the prevalent market rate in this district is in the range of $200.00 to $250.00 for partners and between $100.00 and $200.00 for junior and senior associates." 2002 WL 59106, at *2-3 (citations omitted) (finding that rate of lead counsel in a small firm of $225.00 per hour and rates of $135.00 and $100.00 per hour for junior counsel were reasonable). More recent case law from this district suggests that an award of $230.00 to

$300.00 per hour for partners is consistent with prevailing rates in the Eastern District of New York.  See King v. JCS Enterprises, Inc., 325 F. Supp. 2d 162 (E.D.N.Y. 2004).

Plaintiff seeks an award of $1,469.50 in attorneys' fees from defendant for activities directly related to the claims alleged against him.  Jacobson Decl. ¶ 3.  This amount is based on a rate of $400.00 per hour for Mario Aieta, Esq., a partner; $350.00 per hour for Steven Oster, Esq., an unspecified attorney with plaintiff's counsels' firm (addressed below); $200.00 per hour for Daniel Jacobson, Esq., an associate; $120.00 per hour for Gwen Brons, a lead paralegal[2]; $95.00 per hour for Linda Bechutsky, a project assistant; and $110.00 per hour for David Gerard, a project assistant.  See Jacobson Decl., Ex. A.

Although this Court finds that the rates specified for Mr. Jacobson as well as the paralegals and project assistants are reasonable, it also finds that the requested rates for Mr. Aieta and Mr. Oster are unjustifiably high in light of the prevailing market rates in this district and given that the issues in this case are not complex or novel.  Even though Mr. Jacobson's Declaration indicates that Mr. Aieta has "been practicing law for over 20 years" (see ¶ 3(a)), plaintiff has not set forth any reason that would justify a rate of $400.00 per hour.  Thus, this Court respectfully recommends that Mr. Aieta's hourly rate be reduced to $300.00 per hour, and accordingly, plaintiff be awarded $360.00[3] for Mr. Aieta's services.  Moreover, while it appears from Exhibit A to Mr. Jacobson's Declaration that Mr. Oster billed a total of 0.7 hours on this case, the Declaration fails to specify Mr. Oster's relevant experience or relationship to the law

---

[2]It appears that Ms. Brons' hourly billing rate was $95.00 up until the November 17, 2003 entry on the time record.

[3]Mr. Aita expended 1.2 hours in connection with this litigation, which, multiplied by $300.00 per hour, equals $360.00.

firm of plaintiff's counsel. Nevertheless, this Court respectfully recommends that Mr. Oster's hourly rate be reduced to $200.00 per hour, and accordingly, plaintiff be awarded $140.00[4] for Mr. Oster's services.

*2. Hours expended*

Plaintiff has submitted contemporaneous time records reflecting charges incurred for activities related to the overall management and prosecution of this case as well as activities directly related to the claims asserted against the defendant. See Jacobson Decl., Ex A.

Upon review of the time records, this Court finds that the time spent by counsel, paralegals and project assistants appears to be reasonable. Accordingly, it is respectfully recommended that plaintiff be awarded attorneys' fees in the total amount of $1,244.50.[5]

*3. Costs*

The Court has examined plaintiff's request for costs in the amount $70.00 and finds that the amount requested is reasonable. Accordingly, it is respectfully recommended that plaintiff be awarded attorneys' fees of $1,244.50 and costs of $70.00, totaling $1,314.50.

**CONCLUSION**

For the foregoing reasons, it is respectfully recommended that the District Court award plaintiff statutory damages of $2,000.00, as well as attorneys' fees and costs of $1,314.50,

---

[4]Mr. Oster expended 0.7 hours in connection with this litigation, which, multiplied by $200.00 per hour, equals $140.00.

[5]As noted above, plaintiff seeks $1,469.50 in attorneys' fees. However, in light of this Court's reduction of Mr. Aieta's and Mr. Oster's fees in the amounts of $120.00 and $105.00, respectively, the original amount of $1,469.50 should be reduced by $225.00 ($120.00 + $105.00), thus totaling $1,244.50 ($1,469.50 - $225.00).

for a total award of $3,314.50 against defendant, and that plaintiff's request for the entry of a permanent injunction against defendant be deemed withdrawn.

Any objections to this Report and Recommendation must be filed with United States District Judge Nicholas G. Garaufis within ten days of the date of entry of this Report and Recommendation. Failure to object within ten days of the date of entry will preclude appellate review by the District Court. Local Civil Rule 6.3; <u>Frank v. Johnson</u>, 968 F.2d 298, 300 (2d Cir. 1992); <u>see</u> <u>also</u> Fed. R. Civ. P. 72(a) ("Within 10 days after being served with a copy of the magistrate judge's order, a party may serve and file objections to the order; a party may not thereafter assign as error a defect in the magistrate judge's order to which objection was not timely made."). Any requests for extensions of time to file objections should be made to Judge Garaufis.

**SO ORDERED.**
Dated: May 20, 2005
      Brooklyn, New York

                /s/
              **Kiyo A. Matsumoto**
              United States Magistrate Judge
              Eastern District of New York